# EDWARD F. W. ELLIS' ADMINISTRATORS

*v.*

# ISAAC C. BRONSON.

1.  PARTNERSHIP — *liability of partners after dissolution for debts subsequently created — of notice of dissolution.* As between the members of a copartnership, it is at an end by the dissolution of the firm ; and, as a general rule, the dissolution of a partnership terminates the liability of its members to third persons for debts subsequently created in the firm name ; and, in like manner, one who withdraws from a firm will not be liable for debts created in the name of the firm after his withdrawal.

2.  But there are exceptions to this general rule, as applied to third persons ; if notice of the dissolution be not given, and business continues to be transacted in the name of the firm as before, the former members of the firm will remain liable to third persons, notwithstanding the dissolution.

3.  And where persons hold themselves out to the world, by their acts or declarations, as partners, they will be liable as such, whether such relation really exists between them or not. If they permit their names to appear in the style of the firm, in the business cards, notices or advertisements of the firm, they cannot escape liability for debts contracted in the firm name.

4.  In fact, any act done by a retiring member of a partnership, after his withdrawal, which is calculated to induce the community or individuals to believe him a member of the firm, will render him liable for the debts of the firm as though he remained a member.

5.  A retiring member of a firm, may, however, escape liability for any subsequent transaction in the name of the firm with those who have had dealings with it previously, by giving them notice of the dissolution ; and as to all others, by publishing such notice in the public newspaper of the neighborhood ; or by showing that persons dealing afterward with the firm, had actual notice of the dissolution.

6.  SAME — *of dormant partners.* These rules apply to those who have been known as partners, not to dormant partners.

APPEAL from the Circuit Court of Winnebago county ; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

The facts in this case are sufficiently stated in the opinion.

Mr. JAMES M. WIGHT, for the appellants.

Messrs. BROWN & TAYLOR, for the appellee.

Mr. Chief Justice Walker delivered the opinion of the Court:

This was originally a proceeding in the probate court, by Bronson against the administrators of the estate of E. F. W. Ellis, deceased, for the purpose of procuring an allowance of three certificates of deposit given by Spafford, Clark & Co., bankers in the city of Rockford. On a trial in the probate court, one of the certificates was allowed as a claim against the estate, but the others were rejected. The present appellee removed the case to the Circuit Court by appeal, where a trial was had by the court and a jury, who found for appellee the amount of all of the certificates. Appellants entered a motion for a new trial which was overruled, and the case is brought to this court by appeal. The only material question in the case, is, whether Ellis, in his life-time, and when the certificates were given, was a partner in the banking firm, or, if not, whether he held himself out to the world as such, so as to render himself liable for their payment. All of these certificates were assigned to appellee before he filed them in the probate court, and he continued to be the owner until after the appeal to the Circuit Court, when he assigned the judgment to John Platt, giving him the right to prosecute the case in his name.

The first of these certificates bears date the 22d of March, 1859, and was given to Thomas Marshall. The second was given to S. A. Knapp, and bears date the 13th of May, 1861; and the third bears date on the 21st of August, 1861, and was given to Richard Dean. As to the first, there seems to be no doubt, that Ellis was a partner in the firm of Spafford, Clark & Co., at the time it was given. It appears that Knapp, to whom the second was given, had some business with the firm for some time previous to the date of the certificate. In reference to the third, there is no evidence that Dean had been a customer, or had ever had any other business transactions with the firm.

The evidence in reference to Ellis' connection with the bank shows that he was a member of the banking firm of Spafford,

Clark & Ellis, which some time previous to March, 1859, was succeeded by the firm of Spafford, Clark & Co., in which Sawyer seems to have taken the place of Ellis. In March, 1859, Ellis re-appears in the bank as a member of the firm of Spafford, Clark & Co. On the 13th of June, 1859, Clark and Ellis, two of the firm of Spafford, Clark & Co., executed an agreement, by which Clark seems to have bought out the interest of Ellis in the property belonging to the banking house of Spafford, Clark & Co., but from that time until September, 1860, Ellis continues at his place in the bank, and no visible appearance or public notice of any change. After September, 1860, he seems to have been engaged temporarily in some business in Chicago, he still continuing to reside in Rockford; and some time in the spring of 1861 he went into the military service, and died in the spring of 1862. In May, 1859, the business card of the firm, previously published in the Rockford register, was changed so as to include Ellis' name as a partner, and this card continued to be published until after the closing of the bank, caused by Clark's death in October, 1861. Ellis took the paper from some time in 1858 until February, 1861. No notice was ever given of his retiring from the firm. Just previous to his going to Chicago, and as late as September, 1860, we find him insisting that he still has an interest in the bank, and his name is to be used with it; and in January, 1862, he acknowledges his liability on the bank matters.

As a general rule, the dissolution of a partnership terminates the liability its members subsequently incurred in its name. And the withdrawal of one or more members of a firm, in like manner, prevents his liability for future indebtedness. But to this general rule there are some well recognized exceptions. If notice of the dissolution is not given, and business is subsequently transacted in the name of the firm as before, those previously composing the firm, although not as between themselves, will be liable to other persons as before. And it is also true that persons holding themselves out to community by their acts or declarations, as partners, will be held liable whether they have or not ever been partners. If they permit their

names to appear in the name of the firm, in the business cards, notices or advertisements of the firm, they will be unable to escape liability to its creditors. So of their acts and declarations. As between themselves, the partnership is at an end by the dissolution of the firm, but, by such acts, it continues as to the public at large. In fact, any act done by a retiring member of a partnership, after his withdrawal, which is calculated to induce the community or individuals to believe him a member of the firm, will render him liable for the debts of the firm as though he was really a member.

When a member of a partnership withdraws, if he fails to give notice of the fact, his liability will continue, unless he can bring home notice to the person seeking to hold him liable. When he withdraws from the firm he can terminate all future liability for its business, by giving notice to the correspondents of the firm, and as to all others by publishing a notice of the dissolution of the firm in the public newspapers of the neighborhood. Or he may escape liability by proving that persons subsequently dealing with the firm had actual notice of his withdrawal, or was not a member of the firm.

Persons in the habit of dealing with a partnership are supposed to have informed themselves of the persons who composed it when they commenced business relations with it. And the law presumes, that, when any change occurs in its organization, they will give notice of the fact. These rules apply, of course, to open and not dormant partners, who have not been known as members of the firm. To permit a person to hold himself out by his acts or declarations, as a member of a copartnership, and thus give it credit, would be to enable him to perpetrate a fraud on community that can never be tolerated. His solvency may alone give the firm credit, and all persons dealing with it are supposed to look to each member for payment.

In this case, it appears that Ellis' name continued to appear in the firm name for some time after his withdrawal from the firm, but was afterward changed, but it does not appear that notice of his withdrawal was ever published. He withdrew from the firm, but permitted his name to appear as it had before

his withdrawal, in the business card of the firm published in the local newspaper; and of the fact he undoubtedly had notice, as he continued to take the paper as a subscriber for many months after he withdrew from the firm.   It would seem to be impossible that he should not have been aware that his name was so used, and the conclusion is irresistible that it was with his approval.   Again, he was proved to have admitted to Sherman, long after his withdrawal, that he still had an interest in the bank, and his name was to be used as before; also, that he was legally liable to the same extent that he had been.   And, after the time when he is claimed to have withdrawn, he continued for more than a year at his place in the bank as he had previously done.   From all these circumstances, we have no hesitation in saying that the jury were fully warranted by the evidence in finding their verdict; and, as the instructions fairly presented the law of the case, the judgment of the court below must be affirmed.

*Judgment affirmed.*