THE CHICAGO TRUST AND SAVINGS BANK

*v.*

FRANK T. KINNARE.

*Opinion filed October 24, 1898.*

1. PARTNERSHIP—*third parties are protected in dealing with osten-sible partner.* The rights of third parties dealing with a person held out to the world as a partner are governed by the same rules as if they had in fact dealt with the full knowledge and consent of all the members of the firm.

2. SAME—*secret retirement of partner does not release firm from liability for his acts.* The retirement of one partner from a firm, without notice of dissolution or change in the firm name, advertisements, sign or methods of business, does not release the firm from liability to third persons dealing with the former partner in good faith, in matters within the scope of the partnership business.

3. SAME—*real partners are estopped to deny liability for acts of osten-sible partner.* Members remaining in a commercial partnership after the withdrawal of one partner, who continue to hold him out to the world as a partner, are estopped to deny liability upon a note signed by him in the firm name without their knowledge, and discounted by a banker in good faith, upon the strength of the firm's credit and without notice of any change in the partnership.

*Chicago Trust and Sav. Bank* v. *Kinnare,* 67 Ill. App. 186, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

CRATTY BROS., JARVIS & CLEVELAND, for appellant:

Persons holding themselves out as partners are liable as such to third persons. Such holding out may be in words spoken or written, or by conduct leading to the belief that one is a member. *Cirkel* v. *Crosswell,* 36 Minn. 323.

Proof that at the date of the note defendants were holding themselves out as partners, establishes partnership so as to charge them with joint liability. Whether persons are partners *inter se* may depend on their contract between themselves. Whether they are partners as to

others depends upon their conduct. *Fisher* v. *Bowles,* 20 Ill. 397.

In ordinary commercial partnerships each partner has an undoubted authority to buy and sell goods belonging to or for the use of the partnership, or ordinary business thereof. Each partner may pledge the partnership paper or borrow money for partnership purposes, and draw, negotiate, accept or endorse bills of exchange or promissory notes, and checks and other negotiable securities, or any other acts which are incident or appropriate to such trade or business, according to the common course and usage of such trade and business. *Ulery* v. *Ginrich,* 57 Ill. 533.

The burden of proof rests upon him who defends on the ground of dissolution, to prove notice of such fact. Abbott on Trial Evidence, 222; Wade on Notice, sec. 530; Daniel on Neg. Inst. sec. 3693; *Vernon* v. *Manhattan Co.* 22 Wend. 193; *Southern* v. *Grim,* 67 Ill. 106; *Meyer* v. *Krohn,* 114 id. 585; *Podrasnik* v. *Martin & Co.* 25 Ill. App. 303; Parsons on Partnership, 447, 448; *Lovejoy* v. *Spafford,* 93 U. S. 438; *Wardell* v. *Height,* 2 Barb. 553.

Barnum, Humphrey & Barnum, for appellee:

When the signing of the firm name by one partner in any transaction, after the partnership is dissolved, is done outside the ordinary course of the firm business, notice of the dissolution is not necessary to the obligee, and the contract will be void. *Hicks* v. *Russell,* 72 Ill. 230; *Spurck* v. *Leonard,* 9 Ill. App. 182; *Bradley* v. *Linn,* 19 id. 322; Daniel on Neg. Inst. sec. 358; Chitty on Bills, 58; *Block* v. *Price,* 24 Mo. App. 14; *Clapp* v. *Rogers,* 12 N.Y. 283; 17 Am. & Eng. Ency. of Law, 1124-1126; *Hutchin* v. *Bank,* 8 Humph. 418; *Merrick* v. *Williams,* 17 Kan. 287; *Vernon* v. *Manhattan Co.* 22 Wend. 183; *Nussbaumer* v. *Becker,* 87 Ill. 282; *Bank* v. *McChesney,* 20 N.Y. 240; *Kallenbach* v. *Dickinson,* 100 Ill. 436; *Bank of Montreal* v. *Page,* 98 id. 109; *Helm* v. *Cantrell,* 59 id. 524.

Although the holder did not have actual notice, but by the exercise of proper diligence would have had notice, or where the facts would have put him on inquiry but for his culpable negligence, he cannot claim to be a *bona fide* buyer. *Insurance Co.* v. *Bennett*, 5 Conn. 574; *Roth* v. *Colvin*, 32 Vt. 125; *Bank* v. *Wilson*, 24 Up. Can. C. P. 362; *Colton* v. *Evans*, 1 D. & B. Eq. 284.

The paper itself may convey notice that the firm are mere sureties on it, either by so stating or by the position of the name upon the paper.    1 Bates on Partnership, sec. 358.

If an endorsed note is in the hands of the drawer the presumption is it was mere accommodation paper.    The law will raise that presumption against a subsequent holder who receives it from the drawer.    There is no presumption that the drawer holds *bona fide* against the firm. *Stall* v. *Bank*, 18 Wend. 478; *Sweetser* v. *French*, 2 Cush. 309; *Kemeys* v. *Richards*, 11 Barb. 312; 16 Pa. St. 399; *Bank* v. *Bowen*, 7 Wend. 158.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

On the first day of September, 1887, William H. Ward, J. C. Goldthwaite and C. F. Remick entered into co-partnership under the firm name of Ward, Goldthwaite & Co., and engaged in the business of selling goods at wholesale in the city of Chicago.    Said firm was organized to continue for three years from date.    On the second day of January, 1889, Solomon Herzog was admitted as a partner in the existing firm of Ward, Goldthwaite & Co., and the partnership was to continue four years from January 1, 1889, unless sooner dissolved by mutual consent or operation of law.    On the 10th of June, 1889, Herzog sold out his interest to his partner Remick, with the consent of Ward and Goldthwaite.    Goldthwaite on the same day ceased to be a member of the firm, but the business was continued under the firm name of Ward,

Goldthwaite & Co., and Goldthwaite was employed as book-keeper and sometimes acted as salesman. Before the change in the firm by the retirement of Goldthwaite, letters and bill-heads of the firm of Ward, Goldthwaite & Co., giving the individual names of the firm as William H. Ward, J. C. Goldthwaite and C. F. Remick, were used, and continued to be used until long after the transaction involved in this case. A sign was placed on the buildings showing the name of the firm to be Ward, Goldthwaite & Co., and, as appears from the evidence in this case, this was done for the benefit and advantage to the business of the name of J. C. Goldthwaite and in order to preserve the good-will of the firm under its original name. This is shown by the members of the firm.

On the 23d of August, 1889, J. C. Goldthwaite, representing himself to be a member of the firm of Ward, Goldthwaite & Co., executed and delivered to the Chicago Trust and Savings Bank a promissory note made payable "to the order of ourselves," for $2500, with interest at the rate of eight per cent per annum after due, which note was signed by Ward, Goldthwaite & Co., and by James C. Goldthwaite. This note was endorsed by Ward, Goldthwaite & Co. and James C. Goldthwaite, and made payable to the appellant. The note was signed in the presence of D. H. Tolman, president of the appellant bank, and a check for the amount of the note, less the discount, was made out, payable to Ward, Goldthwaite & Co., and delivered to J. C. Goldthwaite. It is stipulated that the check for the note signed in the name of Ward, Goldthwaite & Co. on August 23, 1889, was delivered to J. C. Goldthwaite, made payable to Ward, Goldthwaite & Co., and said Goldthwaite took said check and endorsed it in the name of Ward, Goldthwaite & Co., and drew the funds and wrongfully applied them to his own personal use, without the knowledge or consent of either Ward or Remick, or Tolman, the president of the bank. It does not appear that Ward, Goldthwaite & Co., or Ward or Remick,

ever had any dealings with the bank except through
Goldthwaite in transactions similar to this.

The circuit court of Cook county found for defendant
on a trial before the court without a jury, and on appeal
to the Appellate Court for the First District that judg-
ment was affirmed, and plaintiff prosecutes this appeal.

This suit is brought on the note above mentioned, and
it is set up in defense that the signature thereto of Ward,
Goldthwaite & Co. was forged by Goldthwaite, and it is
denied that he had any authority to execute the note.
The note was a judgment note.   Under ordinary commer-
cial partnerships each partner has the right to buy and
sell goods belonging to the firm, and may vouch the part-
nership paper or borrow money for partnership purposes,
and draw, negotiate, accept and endorse bills of exchange
or promissory notes or checks, and do any act incident
or appropriate to the business according to its common
course and usage.   No matter what private arrangement
there may be among the individual members limiting the
duties and responsibilities of each as between themselves,
under the law their power is, as to third parties without
notice, as before stated.

Whilst dissolution of a partnership terminates any
liability of its members for indebtedness subsequently
incurred to one having notice of such dissolution, the
general rule is, if notice of the dissolution is not given
and business is subsequently transacted in the name of
the firm, those preserving and composing the firm will
be liable to persons to whom they thus become indebted,
although not partners as between themselves.   Where
they hold themselves out to the community, by acts or
declarations, as partners, they would become liable as
such even had no partnership ever existed. (*Ellis' Admrs.*
v. *Bronson,* 40 Ill. 455; *Fisher* v. *Bowles,* 20 id. 396.)   It is
a matter of no consequence whether a partner is acting
fairly with his co-partners in a particular transaction
or not; if the act is within the apparent scope of his

authority, and professedly for the firm, his acts and representations are binding upon the firm in favor of the indebtedness of a third party.   In holding him out to the world as a partner in a particular business, they authorize the world to deal with him as possessing all the powers of a partner.   (*Pahlman* v. *Taylor*, 75 Ill. 629.)   In this case a partnership had actually existed in which J. C. Goldthwaite was a member of the firm of Ward, Goldthwaite & Co.   For their own convenience and for their own interests they used stationery indicating, and advertised to the world by their sign, that the business was conducted in the same manner after the retirement of Goldthwaite as before, and held him out to the world as a partner, giving no notice of dissolution or of any change in the firm.   Parties dealing with a partner in good faith, without any notice, must have their rights determined in the same manner and be governed by the same rules as if they were in fact dealing with the full knowledge and consent of all the members of the firm. *Baring* v. *Crafts*, 9 Metc. 380; *Trueman* v. *Loeder*, 11 A. & E. 589; *Stinson* v. *Whitney*, 130 Mass. 591; *Princeton and Kingston Turnpike Co.* v. *Gulick*, 16 N. J. L. 161.

The real members of the firm having held out to the world by advertising and by their sign, and in the manner of doing business, that Goldthwaite was a partner, they are estopped from denying the existence of a co-partnership with him as a member to one who has dealt with him as a member of the firm.   (*Baylor Co.* v. *Craig*, 6 S. W. Rep. 305; *Grissler* v. *Powers*, 81 N. J. 57; *Spears* v. *Toland*, 1 A. K. Marsh. 203.)   No notice of dissolution had ever been given, and by the actual holding out to the world that Goldthwaite was a partner, Ward, Goldthwaite & Co., with all its members, are estopped from denying the validity of Goldthwaite's acts, unless there is something in the transaction itself that notifies and acknowledges that it was not for and on account of the partnership.   In this case there is nothing in the trans-

action to give any notice that it was not for and in the interest of the partnership. When Goldthwaite was held out to the world as a partner for the purpose of securing credit, and representations were made in writing as to who were the members of the firm and as to their own financial ability to sign the firm name to the note, which was also signed by Goldthwaite, the fact that he himself signed the note did not tend to give notice that the transaction was not in the interest of the firm. Whilst the note was also signed by Goldthwaite individually, that in no way tended to give notice that it was not for the use and benefit of the firm. (*Lythe* v. *Ault & Wood,* 7 Exch. 669.) He was held out to the world as one having authority to do all that he did, and the note was discounted and the check payable to the firm delivered to him. It was apparent the president of the bank was acting in good faith and upon the apparent authority of the firm, and by acting as they did and using his name for their own benefit, employing him in the business, they assumed the responsibility for his acts, and so far as the act was within the apparent authority conferred on him by them, they are bound thereby.

The fact that this was a judgment note, and that one partner would not have the right to authorize a judgment against the other members, is not a fact that is calculated to give notice, for the common observation and experience of every business man is that banks and others will use a form of blank notes in various transactions which are not changed simply because one member of the firm signs the firm name thereto.

The holding of the trial court on the first and second propositions of law was substantially in accord with what is here said, but notwithstanding the holding of the court on the first and second propositions the court found for the defendant, and this proposition was refused:

"The court holds, as a matter of law, that if the evidence shows that Ward and Remick, at the date of mak-

ing the note, held out to the world that Goldthwaite was a partner in the firm, under the firm name of Ward, Goldthwaite & Co., and that Tolman and the plaintiff had no knowledge of any dissolution of said firm, and if the evidence further shows that the note of August, 1889, was discounted in the name of Ward, Goldthwaite & Co. and a check given to Goldthwaite payable to the firm, and that Goldthwaite, without the knowledge of Ward and Remick and without the knowledge of the said Tolman and the bank, endorsed the name of the firm upon the back of such check, and then, without the knowledge of Ward and Remick and without the knowledge of Tolman or the bank, wrongfully converted the funds to his own use, and if the evidence further shows that the note in suit was a renewal of said note of August, 1889, then the plaintiff is entitled to recover from the defendants the amount of the note, with interest thereon, precisely as if said Goldthwaite had been actually a member of said firm."

. Under the facts appearing in the record this proposition stated a correct principle and should have been held as asked. Had it been held as asked the finding would necessarily have been for the plaintiff, as it came by the note fairly and without the knowledge of fraud.

This case is distinguishable from the case of *Charles* v. *Remick*, 156 Ill. 327, as many of the facts shown in this case were not presented on the trial of that. The written statement made by Goldthwaite as to the assets of the firm at the time the note was discounted, and the books showing the same, were not in evidence in that case. That case is not conclusive of the questions presented on this record.

The judgments of the circuit court of Cook county and of the Appellate Court for the First District are each reversed and the cause is remanded.

*Reversed and remanded.*