### Milton H. Wilson et al. v. Henry H. Roelofs et al.

1. INNOCENT PURCHASERS—*Who Are.*—Parties who acquire goods under a chattel mortgage without any knowledge of their fraudulent acquisition by the mortgagor must be deemed innocent purchasers.

2. PARTNERS—*When Parties Are Liable as.*—Where parties hold themselves out to the community by acts or declarations as partners they will become liable as such, even if no partnership ever existed.

3. SAME—*Acts Within the Apparent Scope of Partner's Authority.* —It is a matter of no consequence whether a partner is acting fairly with his copartners in a particular transaction or not; if the act is within the apparent scope of his authority and professedly for the firm, his acts and representations are binding upon the firm in favor of the indebtedness of a third party.

Wilson v. Roelofs.

**Replevin.**—Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1899.   Reversed and remanded.   Opinion filed May 4, 1900.

**Statement.**—This is a replevin suit brought by appellees to recover from appellants certain goods which the latter had taken under a chattel mortgage.

Prior to August 10th, there had existed in Chicago a firm known as McCrea & Young, consisting of James McCrea, Jr., and George R. Young.   At that date the firm dissolved, McCrea retiring, and Young continued the business, using, however, with McCrea's consent, the name and style of the old firm as before the dissolution.   The signs, labels and stationery still bore the old firm name, and the letterheads exhibited also the individual names of James McCrea, Jr., and George R. Young, as if no dissolution had occurred.

Appellees are wholesale merchants in Philadelphia.   In January, 1895, their Chicago agent sold, as he supposed, to McCrea & Young, a bill of goods, and in March following additional goods were ordered in the same firm name.

March 29, 1895, the said Young, who had been thus conducting the business under the old firm name, executed a note in payment of indebtedness to Wilson Bros., the appellants, and secured the same by a chattel mortgage upon his stock, which included goods purchased from appellees. This chattel mortgage was immediately foreclosed, and a few days thereafter appellees instituted the present suit and caused the seizure of the goods in controversy under a writ of replevin.

At the close of all the evidence counsel for appellants requested an instruction directing the jury to find their clients not guilty.   The court refused to so instruct, and from the finding and judgment in favor of appellees this appeal is prosecuted.

CRATTY, JARVIS & CLEVELAND, attorneys for appellees.

FLOWER, SMITH & MUSGRAVE, attorneys for appellants.

MR. JUSTICE FREEMAN delivered the opinion of the court. There is no material conflict as to the facts.

It is contended in behalf of appellees that they were led to suppose that they were making a sale of the goods in controversy to the firm of McCrea & Young, when in fact no such firm then existed; that there was thus fraud and mistake in the identity of the buyer, and the contract of sale was therefore void; that no title was acquired by McCrea & Young, or either of them, and none can be acquired from them; and that appellees can maintain trover or replevin to recover the property wherever it may be found, even in the hands of innocent purchasers. This contention was apparently sustained by the trial court.

That appellants were innocent of knowledge of the transactions between appellees and Young in the name of McCrea & Young is not questioned. They acquired the property in controversy with other property from Young, under a chattel mortgage given to secure payment of a legitimate indebtedness. Having no knowledge of the nature of the transactions out of which appellee's claim arises, they must be deemed innocent purchasers. Kranert v. Simon, 65 Ill. 344.

If Young acquired a good title in his own name or in the firm name of McCrea & Young, by the purchase from appellees, then there can be no question as to the validity of the conveyance to appellants. It is urged that he did not; that there was no sale either to him or to the supposed firm, because there was no agreement, no meeting of the minds of the parties to the transaction, and hence no contract. It is said there was no sale to McCrea & Young because no such firm existed, as Young well knew, although he was making the purchase in that firm name; and that there was no sale to Young because appellants supposed they were selling to McCrea & Young, when in reality the purchaser was Young alone.

This view is elaborately argued by appellees, and authorities are cited in support of the proposition that a third party can acquire no title to personal property from one

who obtained possession through a contract void on account of mistake; as where A sells goods to X, being led to think X is Y, and X sells the goods to M, who acquires no right. Citing Anson on Contracts, 2d Am. Ed., star page 205; Winchester v. Howard, 97 Mass. 304; Boston Ice Co. v. Potter, 123 Mass. 28; Rodliffe v. Dollinger, 141 Mass. 1, and like cases.

We regard the sale, however, assuming that it was made by appellees in good faith, as having been actually made to the firm of McCrea & Young, which is precisely what appellees say they intended to do, and supposed they had done.

We are not called upon in this collateral proceeding to determine the existence or non-existence of a liability of McCrea to appellees. It may be that in a direct action he would be able to make good his defense. As to that we can not say, and we must not be understood as in any way prejudging any issue, should it arise between him and appellees. It is suggested by counsel for the latter that he would not be so liable to them as copartner with Young, under the evidence before us; and that if he was, appellees had an election either to invoke the doctrine of estoppel against him, or to treat the sale as a nullity and replevy the property, as they have chosen to do.

We can not agree with counsel that appellees had an option to treat the sale as a nullity as against appellants. If McCrea permitted himself to be held out, as the evidence tends to show that he did, as a member of a still existing firm of McCrea & Young, then as to third parties dealing with such supposed firm in ignorance of the real facts, he is estopped to deny the partnership, and is liable to such innocent parties as fully as though in fact a copartner. A sale made to such supposed firm in good faith, is an actual sale in legal intent and consequences, no matter what may have been the private understanding between the parties themselves, who thus held themselves out to the world as partners. McCrea had, in legal effect, constituted Young his agent to use the former's name as if the old partnership

between them still existed. He had expressly authorized the use by Young of the "firm name of McCrea & Young upon his signs and for such other purposes as he may see fit in conducting said business." The private agreement between them, that the firm name should not be used in such manner as to fasten any liability on McCrea, could not affect the rights of third parties who were not aware of the arrangement. The general public, who saw the firm name in constant use in the same way as before the dissolution, were not concerned with private understandings between the partners, any more than when the actual partnership existed. When, therefore, Young bought the goods in question of appellees in the firm name, he bought for the supposed firm; and appellees sold to the firm when they made the sale, if they did so make it, supposing they were dealing with the firm of McCrea & Young. There was no mistake in the identity of the purchaser, for it was the firm as to them, just as they supposed it to be. It does not appear that Young made any representations whatever to appellees other than what were implied by the continued use of the firm name, which he had authority for, from McCrea. That in making this purchase he incurred liability for McCrea, is a matter between themselves, and does not affect the rights of appellees. It is said in Stinson v. Whitney, 130 Mass. 594, that when partners, as in this case, after a dissolution as between themselves, continue the business in the same manner and hold themselves out to the world as partners, the rights of parties dealing with the supposed partnership in good faith, "are to be determined in the same manner and are to be governed by the same rules as if they were dealing with an actual partnership." In Trust & Savings Bank v. Kinnare, 174 Ill. 358 (362), it is said:

"While dissolution of a partnership terminates any liability of its members for indebtedness subsequently incurred to one having notice of such dissolution, the general rule is, if notice of the dissolution is not given and business is subsequently transacted in the name of the firm, those preserving and composing the firm will be liable to persons to

whom they thus become indebted, although not partners as between themselves. Where they hold themselves out to the community by acts or declarations âs partners they would become liable as such, even had no partnership ever existed. (Ellis, Adm., v. Bronson, 40 Ill. 455; Fisher v. Bowles, 20 Id. 396.) It is a matter of no consequence whether a partner is acting fairly with his copartners in a particular transaction or not; if the act is within the apparent scope of his authority and professedly for the firm, his acts and representations are binding upon the firm in favor of the indebtedness of a third party." See also, The Barnett Line of Steamers v. Blackmar, 53 Ga. 108.

From the undisputed facts there was clearly an actual sale, legal and binding, to McCrea & Young, by appellees, if the latter were misled as they claim to have been by McCrea's conduct to suppose in good faith that they were dealing with the firm. If they were not so misled, and knew or ought to have known they were dealing with Young alone, then there was an actual sale to Young binding also upon all parties.

In either event a good title passed from appellees. If Young used goods bought in the old firm name or by the firm itself in legal effect to pay his own debts, it is not a matter of which appellees can complain. The innocent purchasers in this case acquired a good title.

The judgment of the Circuit Court must be reversed and the cause remanded.