### Earl H. Reynolds v. August D. Radke.

#### Gen. No. 4,255.

1. PARTNERSHIP—*when evidence sufficient to establish.* Held, that the evidence in this case was sufficient to raise a fair presumption of partnership.

2. PARTNERSHIP—*how question of existence of, determined.* Whether persons are partners as between themselves may depend upon their contract; whether they are partners as to others, depends upon their conduct.

3. FRAUDULENT CONVEYANCE—*what sufficient to establish, so as to sustain attachment issue.* Where firm property by sale and conveyance is appropriated to the payment of the individual debts of one partner, a fraudulent conveyance sufficient to establish an attachment is established.

Proceeding in attachment. Error to the Circuit Court of Carroll County; the Hon. RICHARD S. FARRAND, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed March 14, 1904.

G. A. STULTZ and GEORGE L. HOFFMAN, for plaintiff in error.

D. S. BERRY, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of
the court.

In this attachment brought by Radke against Earl H.
Reynolds and Thomas N. Cronister as partners, there was
no sufficient service upon Cronister and he did not appear,
but Reynolds filed pleas of the general issue, denying joint
liability, and traversing the affidavit for attachment. There
was a verdict for plaintiff for $649.90 and sustaining the
attachment, a judgment against Reynolds and an order
for the sale of the real estate attached. Reynolds has sued
out a writ of error. The main questions are whether the
parties were partners and whether the attachment was sup-
ported by the proofs.

Cronister lived at Milledgeville, in Carroll County; Rey-
nolds lived at Sterling, in Whiteside County. Reynolds
owned a building in Milledgeville. A saloon was opened
therein and conducted some six or seven months. Plaint-
iff's cause of action was for beer sold by plaintiff for use in
that saloon. The saloon license ran to Reynolds. Cronister
usually conducted the business. From the time plaintiff
commenced selling and delivering beer there till he ceased,
which was substantially all the time the saloon was run, the
sign, painted on the front window in large letters reaching
across the window, read "Reynolds & Cronister," or, accord-
ing to some of defendant's witnesses, "Cronister & Rey-
nolds." That sign was painted after the saloon was opened,
and there was proof Cronister was present while it was being
painted. Cronister had one hundred and fifty copies of an
advertising calendar printed, on which the names of the
proprietors were given as "Reynolds & Cronister." Cron-
ister admitted that was printed by his direction. Cronister
burned most of these calendars, because, according to
plaintiff's proof, another saloon had the same picture upon
its calendars; but the proof is a few were circulated and
that one hung upon the wall of the saloon. Reynolds
furnished Cronister his blank check, which Cronister filled
out, and with the proceeds the license was procured and the
business started. Every few days Reynolds drove over to

Milledgeville and stayed at the saloon a day or two, and while there he was in and about the saloon, and frequently sold drinks over the bar and received the pay, and sold drinks to plaintiff and received pay from him. When they first met, Cronister introduced Reynolds to plaintiff as his partner, and Reynolds' conversation with plaintiff then was that of a proprietor. Reynolds complained to others that he was not getting enough out of the proceeds of the business, and that he did not see what Cronister was doing with all the money. On one of his visits to Milledgeville he told a witness he came over to look after his business, he wanted it run right, and wanted the witness to keep watch, and let him know if anything went wrong with the saloon. When plaintiff went to Reynolds with the bill for the balance due, Reynolds said everything was all right, that he wanted to pay plaintiff, and if plaintiff would wait a little he was going to see Cronister and get some money out of him and then he would pay plaintiff; that he did not want to pay it all himself, but he would see plaintiff got his money. Speaking to another witness of this saloon, he said the business was running behind and he was not getting the money he thought he should. Once he applied to the village authorities to have the unearned license money returned to him, but later said he had changed his mind and decided to let the business go on as it was.

These and other circumstances introduced by plaintiff were sufficient to raise a fair presumption that Reynolds and Cronister were partners. Then the acts and declarations of Cronister became competent evidence against Reynolds to strengthen the *prima facie* case already established. Daugherty v. Heckard, 189 Ill. 239; Conlan v. Mead, 172 Ill. 13. Proof was made of several statements by Cronister that he and Reynolds were partners, and of acts by him tending to the same conclusion. The beer was shipped to Cronister as consignee, but by Cronister's direction, because Reynolds did not live in that town. Reynolds and Cronister each gave testimony tending to show the relation between them was that of landlord and tenant, and of debtor

and creditor, and not that of partners. The testimony of Reynolds that he did not see the words " Reynolds & Cronister " on the front window of his own building, and did not see that firm name on the calendar hanging on the wall, though he was there for a day or two nearly every week during the entire six months and was in and out of the saloon frequently and selling liquor behind the bar, probably did not gain much credence from the jury. Cronister gave no good explanation for ordering " Reynolds & Cronister " printed on the calendars if there was no partnership, nor for taking out the license in the name of Reynolds, nor did he explain why, if the painter improperly painted that firm name on the front window, he did not have it changed at once, but let it remain all the time he did business there. Plaintiff saw the sign, saw the calendar, saw Reynolds selling liquor behind the bar, and Reynolds was introduced to him as Cronister's partner, and he heard no contradiction or question. Defendant's proof denied some of this testimony introduced by plaintiff, but in several important particulars defendant was outnumbered; and the facts were for the jury. We think the jury were warranted in concluding Reynolds and Cronister were partners, and that the attempt to deny that relation was an afterthought adopted to evade payment of plaintiff's bill; and, further, if that conclusion admitted of serious doubt, still the jury were warranted in finding that the parties held themselves out to the world and to plaintiff as partners, and were therefore liable as partners to plaintiff. Whether persons are partners as between themselves may depend upon their contract with each other. Whether they are partners as to others depends upon their conduct. Fisher v. Bowles, 20 Ill. 396; Ellis' Admrs. v. Bronson, 40 Ill. 455; Chicago Trust & Savings Bank v. Kinnare, 174 Ill. 358. Whether Cronister paid plaintiff $185 which was not credited, was a disputed question of fact. Plaintiff denied it and proved an admission by Cronister that $664 or $665 was due, and a promise by each defendant to pay that bill. At the trial he conceded a small sum should be deducted. We see no reason to disturb the conclusion of the jury on that subject.

Reynolds v. Radke.

The attachment was based on the charge that defendants had within two years fraudulently conveyed or assigned their property so as to hinder and delay their creditors. The proof showed that when plaintiff was pressing each partner for his pay, Reynolds told plaintiff he had sold out to Cronister and had nothing to do with the bills; that Reynolds then went to Cronister and got from him a bill of sale of all the firm property in payment of a debt which Reynolds claimed Cronister owed him; and that a few days later Reynolds sold the firm property to a third party. By these acts property primarily liable for the debts of the firm became the individual property of Reynolds and primarily liable for his individual debts. Then by the sale to a third party the firm property was put wholly beyond the reach of firm creditors, and Reynolds appropriated its proceeds to his individual use. Such an appropriation of firm property to the payment of individual debts is fraudulent *per se* and void as to creditors of the firm. Keith v. Fink, 47 Ill. 272; In re Landfield, 80 Ill. App. 417. The proof warranted the conclusion that these shifts were adopted by Reynolds and Cronister in an effort to put the firm property beyond the reach of plaintiff, their creditor.

The action of the court upon the instructions was in harmony with the views herein expressed. No ruling was obtained upon the language used by plaintiff's attorney to the jury, nor was any exception taken to any ruling thereon. No question concerning its propriety is presented for our decision by this record. We find no reversible error in those rulings which have been discussed by counsel. The judgment is therefore affirmed.

*Affirmed.*