### Don Milliman et al., Appellees, v. Joy Seed et al., Appellants.

1. BANKS AND BANKING, § 21*—*what is effect of transfer of shares of stock to other partners on liability to creditors.* On a bill to dissolve a banking copartnership which had issued shares of stock, for the appointment of a receiver, for an accounting and ·to enjoin creditors from prosecuting suits, etc., where by supplemental bill it was alleged that a bill praying for substantially the same relief which had been brought in another county had by agreement been abandoned, and that it had been further agreed that all matters should be determined in the original bill in question, and certain of the defendants in their answers claimed that when they transferred their stock the corporation was solvent, and it further appeared that only ten per cent. of the par value of the shares of stock had been paid in by the stockholders, and a decree was entered directing that all of the original stockholders pay to the receiver the remaining ninety per cent. of the stock issued to them, including costs of suit and $1,000 solicitor's fees to complainants' solicitors, *held* that certain defendants were not released from their liability to creditors by reason of the transfer of ·their stock, to other members, and that the provision of the decree providing that defendants, together with others, should pay the remaining

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Milliman v. Seed, 206 Ill. App. 362.

ninety per cent. in accordance with the number of shares of stock held by them was equitable and divided the liability in just proportion.

2. BANKS AND BANKING, § 60*—*when solicitor's fees are properly allowed out of funds derived from unpaid portion of stock and paid into court.* On a bill for the dissolution of a banking copartnership which had issued shares of stock, the appointment of a receiver, an accounting, etc., where a decree was entered directing the stockholders to pay to the receiver the unpaid portion of their stock, the costs of suit and. $1,000 as the fee of complainants' solicitor, and defendants complained of the allowance of said fee, *held* that as it was necessary for complainants to employ a solicitor to procure an accounting and bring a fund into court for distribution, and as such action was brought about to the common benefit of all copartners, it was but equitable that the expenses of the suit, including the solicitor's fees, should be made a charge upon and paid out of the fund.

3. APPEAL AND ERROR—*when failure to give required notice of suing out of record is immaterial.* In the case of an appeal from a chancery proceeding, where the giving of only one day's notice by appellants of the suing out of the record was complained of, and where it was contended that the provision of section 81 of the Practice Act (J. & A. ¶ 8618), requiring that five days' notice be given, was mandatory, *held* that the object of such provision was to give appellees or defendants in error the opportunity to file a *præcipe* for any other portions of the record they might deem necessary, and as the entire record was brought up by appellants, the appellee was not injured and the failure to give notice for the requisite length of time was not material.

Boggs, J., dissenting.

Appeal from the Circuit Court of Richland county; the Hon. CHARLES H. MILLER, Judge, presiding. Heard in this court at the October term, 1916. Affirmed. Opinion filed April 13, 1917.

GEORGE W. LACKEY, for appellants.

S. J. GEE, for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Don Milliman and others filed a bill in chancery to the July term, 1916, of the Circuit Court of Richland county, against Joy Seed, J. W. Grissom, O. P. Harris and others, in which it was charged that complainants and defendants did on the 19th day of February, 1910, begin the banking business at West Liberty, Illinois, under the firm name of "Bank of West Liberty" as a copartnership, with a capital stock of $25,000, paid under a written agreement entered into shortly prior to that time; that the copartnership conducted a banking business from said time until March 30, 1916, when the bank closed; that said bank is insolvent and has liabilities over and above its collectible resources of about the sum of $11,000; that a number of depositors have brought suit for the amount due them; that about three hundred other depositors are threatening suit and other litigation is threatened, all of which will cause a great waste of funds; that a number of the original copartners have claimed to transfer their interest in said copartnership to other copartners; that there are two hundred and fifty shares of said copartnership and the copartners have paid in ten per cent. of the amount of the capital stock, or $2,500; that by reason of the closing of the bank and the bringing of the suits aforesaid, it is necessary to dissolve the copartnership, to have a receiver appointed, to have an accounting made and that the creditors be enjoined from prosecuting suits, etc.

A supplemental bill was subsequently filed stating that, unknown to complainants, certain parties who were made defendants to the original bill had filed a bill of complaint in the Circuit Court of Lawrence county, Illinois, seeking substantially the same relief; that under the original bill of complaint, a receiver had been appointed and qualified and had taken possession of a large amount of property belonging to said bank; that an agreement had been reached by

which the bill filed in Lawrence county should be abandoned and all matters determined under the original bill filed in the Circuit Court of Richland county. The agreement referred to, and which was made a part of the original bill, shows the list of persons who agreed to take shares of stock in the bank and the number of shares subscribed by each; that the par value of each share was to be $100; that an assessment of ten per cent. should be paid for the purpose of carrying on the business and no further assessment made except by the concurrence of seventy-five per cent. of the stockholders; that no member of the copartnership should sell or dispose of his interest except to some other member of said copartnership; that the sale of the interest of any one or more of the members should not work a dissolution of said copartnership; that the articles of agreement should not be abrogated or the copartnership dissolved, except by a two-thirds vote of all the members thereof.

Defendants J. W. Grissom and O. P. Harris filed a joint and separate answer admitting the formation of the copartnership named and most of the other material allegations of the bill, but denying that the copartnership is insolvent. Said J. W. Grissom admitted by his answer that he was an original subscriber for stock in the bank and signed the articles of agreement; that stock certificate No. 4 for twenty shares of stock was issued to him February 19, 1910; that afterwards on June 25, 1910, he transferred said shares of stock to H. R. Field, another stockholder, according to the terms and agreements of said copartnership. Said defendant O. P. Harris averred that he never signed the original articles of copartnership but that on February 22, 1910, five shares of stock were issued to him which he afterwards, on February 16, 1911, transferred to one Herman Steffens, one of the original copartners. Said defendants further averred that at

the time they respectively transferred their stock the said copartnership was solvent and has ever since remained solvent; that since the transfer of said shares they have had no part or interest in said copartnership and never received any profits therefrom and have not taken any part in any of the business conducted by said copartnership; that since such transfer their names have not been used with their knowledge or consent as members of said copartnership. Replication in the usual form was filed to said answer.

The proof showed the facts to be substantially as set forth in the original and supplemental bills. The ten per cent. of the capital contributed by the original subscribers, in accordance with the terms of the agreement, appears to have been used up in procuring a banking building, purchasing the necessary fixtures and other expenses attending the opening of the bank. Deposits were received by the bank and upon this the banking business was conducted and for a time dividends paid upon the amount paid in by the share holders. Business troubles subsequently arose, however, and on March 30, 1916, the cashier closed the doors of the bank and absconded, leaving about $50 in cash and a considerable amount of paper, some of which was of questionable value. Suits were brought by creditors and others threatened in Lawrence county and in Richland county, but an agreement was reached by which the rights of all the parties should be determined upon the original and supplemental bills above referred to filed in Richland county. Upon the hearing the chancellor entered a decree substantially sustaining the allegations of the original and supplemental bills and finding, among other things, that J. W. Grissom and O. P. Harris had attempted to transfer their stock but that no notice of said transfer was given to the directors or depositors of said bank; that the transfer of stock aforesaid by said copartners

was not made in the manner provided in the articles of agreement and that there was no legal transfer of said shares of stock which abrogated the copartnership agreement. A decree was entered directing, among other things, that the original stockholders pay to the receiver the remaining ninety per cent. of the stock issued to them and the costs of suit, including $1,000 solicitor's fee, to the solicitor for complainants. From that decree the said J. W. Grissom and O. P. Harris have prayed an appeal to this court.

The principal question presented for our consideration by this appeal is whether or not the fact that appellants sold and assigned their shares to other members of the banking association relieved them from all further liability for the debts of the concern. It is undisputed that appellant Grissom was a signer to the original articles of agreement and took twenty shares of stock on February 19, 1910, which he sold to H. R. Field, who was one of the original stockholders, on June 28, 1910; that appellant Harris bought five shares of stock about March 1, 1910, for which he paid the full par value, and sold the same to H. P. Steffens, who was one of the original signers of the articles of copartnership and an original stockholder, on February 16, 1911; that said Harris was one of the promoters of the bank but did not sign the original articles of agreement; that neither of appellants took any part in the management of the business after the sale of his stock; that appellant Grissom never received any dividends whatever and that appellant Harris received the first year's dividends only; that after the assignment of their stock, the assignees of appellants voted such stock at the meetings and received such dividends as were paid thereon; that no notice was given by appellants to the creditors of the bank to their associates or to the public in general of their withdrawal from the copartnership or the as-

signment of their shares to other parties. The only provisions contained in the articles of copartnership in reference to the sale of an interest therein are articles No. 7, 8 and 9, which provide that no member of the copartnership could sell his interest except to some other member thereof; that the sale of any interest or death of one of the members should not work a dissolution of the copartnership; and that the sale of the interest of any one or more of the members should not work a dissolution of the copartnership. Where a number of persons become members of an unincorporated or joint stock association, by entering into articles of agreement, for the carrying on of a banking business, they become partners and each member is liable for the debts of the association unless he has shifted his responsibility in the mode provided for in the articles of association, and when the articles of association provide a special method for the transfer of shares, that method must be followed. *Wadsworth v. Duncan,* 164 Ill. 360; *Chicago Trust & Savings Bank v. Kinnare,* 174 Ill. 358. As a general rule a member of a copartnership cannot escape liability unless he gives notice of his retirement from the firm to those who have actually done business with the copartnership, and a general public notice in a newspaper of the neighborhood to all those who may in the future deal with the same. *Ellis' Adm'rs v. Bronson,* 40 Ill. 455; *Arnold v. Hart,* 176 Ill. 442.

It was also held in *Arnold v. Hart, supra,* that a depositor is presumed in law to have relied upon the financial ability and integrity of each ostensible partner in a banking firm, at the time he began business relations with such firm, and as to him the original partnership continues until he has knowledge or notice of a change in the same; he may hold the original partners for deposits made after a change in the firm of which he has no knowledge or notice. In *Hossack*

*v. Ottawa Development Ass'n,* 244 Ill. 274, the following language is used concerning the question here under consideration: "The legal status of unincorporated societies and voluntary associations has not been very satisfactorily determined on many points. While the courts will generally treat the members as ordinary partners and the associations as partnerships, they will, as far as possible, give effect to the articles of association or agreement among the members themselves, when they themselves are the only ones interested. If such an association be organized for pecuniary profit, so far as the rights of third persons and liabilities of the members to strangers are concerned, such association is usually considered as a partnership." Under the law as laid down by the above authorities and the proofs in this case, it appears to us clear that appellants were not released from their liabilities to creditors by reason of the transfer of their stock. The decree of the court provided that they together with the others should pay in accordance with the number of shares of stock held by them in the association, that is, that each should pay the remaining ninety per cent. of the original stock so held which had never been paid into the concern. This order was entirely equitable and divided the liabilities in just proportion among the parties interested in the association. The court further ordered in the decree that any original stockholder who may have transferred his stock at a subsequent time should have reserved to him the right of action against his transferee, for the amount which he should, by order of the court, be required to pay. But that question does not concern us on this appeal.

Appellants further complain of the decree of the court below in that it provided that a solicitor's fee of $1,000 be paid to S. J. Gee, solicitor for appellee, by the receiver, out of the assets coming into his hands.

The rule is laid down in 3 Amer. & Eng. Encyc. of Law (2nd Ed.) 458, that: "Where a fund is brought into a court of equity through the services of an attorney, who looks to that alone for his compensation, although his interest cannot technically be called a lien, he is regarded as the equitable. owner of the fund to the extent of the reasonable value of his services, and the court administering the fund will intervene for his protection, and award him a reasonable compensation to be paid out of it. * * * It must always appear that the services of the attorney operated to secure or collect the fund out of which he claims to be paid." Upon the same subject, it is said in 4 Cyc. 1013: "While there is, strictly speaking, no lien on any fund which is within the custody or control of the court, the court may award attorney's fees out of the fund." The same construction is given to the law upon this subject in 6 Corpus Juris, 782. In the case of *Abend v. Endowment Fund Commission of Mc-Kendree College,* 174 Ill. 96, where solicitors' fees had been allowed out of a trust fund, it is said: "A trust may be lawfully required to bear the necessary expenses of its own preservation. The claim to this fund set up and pressed by appellant made the services of solicitors necessary to the preservation of any part of it to its proper use, and the allowance of reasonable solicitors' fees, to be paid out of the fund, under such circumstances is neither error nor a diversion of the fund." In this case it was necessary for appellees to employ a solicitor to procure an accounting and bring a fund into court for distribution. This object was brought about to the common benefit of all copartners, and it is but equitable that the expenses of the suit, including solicitors' fees, should be made a charge upon and paid out of the fund.

Appellees suggest in their brief that only one day's notice was given by appellants of the suing out of the

record in this case, whereas section 81 of the Practice Act (J. & A. ¶ 8618) requires that five days' notice shall be given and insists that this provision is mandatory. Upon this subject our Supreme Court in *People v. Union Gas & Electric Co.*, 258 Ill. 193, says: "We agree with appellee that the statute imposes a duty on parties intending to take an appeal or prosecute a writ of error to give the required notice, but we do not agree that the giving of such notice is an indispensable prerequisite to the right to have the record reviewed. The object of the Legislature is clearly expressed in the statute above quoted. It was intended to give the appellee or defendant in error information as to the particular portions of the record that the appellant or plaintiff in error intended to bring up, in order that appellee or defendant in error might, if he saw proper, file an additional *præcipe* for any other portions of the record that he might deem necessary to a full presentation of the errors assigned by appellant or as a basis for any cross-errors that he might desire to assign. If appellant brings up the entire record the failure to give notice can work no injury to appellee, and this court has held that where the complete record is brought up, the failure to give the notice is a matter of no serious importance." In this case notice was in fact given, though not for the required length of time, and the entire record appears to have been brought up so appellee was not in any way injured, and the failure to give notice for the requisite length of time cannot be considered material.

The decree of the court below will be affirmed.

*Affirmed.*

MR. JUSTICE BOGGS dissenting.