DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1919.

McNeil & Higgins Company, Appellee, v. William Hamlet et al. Louis J. Yager, Appellant.

### Gen. No. 6,552.

1. PARTNERSHIP, § 255*—*how retiring partner relieved from liability for subsequently contracted debts.* A retiring partner can relieve himself for liability for subsequently contracted debts, by actual notice of the dissolution, as to those accustomed to deal with the firm, regardless as to how such notice reaches the creditor.

2. WITNESSES, § 232*—*when cross-examination unduly restricted.* In an action against former partners to recover the price of goods purchased after the dissolution of the firm from one who claimed to have had no notice of the dissolution, cross-examination of one of the partners on behalf of the retiring partner as to a conversation with respect to dissolution had between such partner and one of plaintiff's salesmen, *held* unduly restricted by the exclusion of leading questions.

3. PARTNERSHIP, § 255*—*when direction of verdict for creditor against retired partner improper.* It is error to direct a verdict in favor of a subsequent creditor of the firm against a retired partner for partnership debts, where there was evidence that the remaining partner discussed the dissolution with the creditor's salesman 4 days before dissolution and that after dissolution bills were paid by the personal check of the remaining partner and that notice was published in the local paper.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

501

4. PARTNERSHIP, § 255*—*when erroneous to exclude evidence of notice of dissolution.* In an action against former partners on a debt contracted subsequent to dissolution, it is erroneous to exclude evidence of notice of dissolution published in a local paper, without giving the defendant an opportunity to show the character of the notice and the prominence of the paper.

5. APPEAL AND ERROR, § 1793*—*when judgments reversed as to both defendants.* In an action against former partners on a debt contracted subsequent to dissolution, alleged judgments having been entered separately against the two partners, and plaintiff insisting that they constituted only one judgment, both will be reversed on finding one of the judgments erroneous.

Appeal from the County Court of Lake county; the Hon. PERRY L. PERSONS, Judge, presiding. Heard in this court at the April term, 1918. Reversed and remanded. Opinion filed February 8, 1919.

CLARENCE W. DIVER, for appellant; CHARLES H. KING, of counsel.

ALBERT E. BEATH, for appellee; OSCAR B. McGLASSON, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

In September, 1917, McNeil & Higgins Company brought this suit in the court below against William Hamlet and Louis J. Yager, who the declaration alleged were trading under the firm name of Yager & Hamlet. Hamlet was defaulted. Yager filed a plea in abatement, denying the partnership at the time of the transactions involved, and also a plea of the general issue. The declaration and pleas were each duly verified. There was a jury trial as to Yager, and at the close of the evidence the court directed a verdict against him. Motions by him for a new trial and in arrest of judgment were denied. There was apparently one judgment against Hamlet and another against Yager, for slightly different amounts. Yager prosecutes this appeal.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Yager and Hamlet had been partners in the business of selling groceries, clothing and shoes in the Village of North Chicago in Lake county. They dissolved that partnership by written articles on August 12, 1916, and Yager retired from the business. There is proof slightly tending to show that Yager and Hamlet had been buying goods of McNeil & Higgins Company before the dissolution and that Hamlet continued that course of dealing after the dissolution. Hamlet continued the business until about August 1, 1917. There is nothing in this record to show for what kind of merchandise this suit is brought nor whether it was the same kind of merchandise in which Hamlet & Yager had been dealing, nor is there any proof to show when the goods here sued for were sold. An attorney for McNeil & Higgins Company made a statement during the trial, which implied that these goods were sold on July 20, 1917, nearly a year after the dissolution. This statement was not proof but bound plaintiff. The chief litigated question is whether Yager, the partner who retired, is bound for this bill.

Where one member of a firm retires and the firm name is still used, then, as to those accustomed to deal with the firm and who continue to do so after the dissolution or retirement, the retiring members can only relieve themselves from liability by giving actual notice. As to persons accustomed to deal with the firm and so continuing, the partnership is presumed to continue until they have actual notice of the change; but it is immaterial how that notice is given, if actual notice does reach the former correspondents of the firm. *Page v. Brant*, 18 Ill. 37; *Ellis' Adm'rs v. Bronson*, 40 Ill. 455; *Holtgreve v. Wintker*, 85 Ill. 470; *Arnold v. Hart*, 176 Ill. 442; 30 Cyc. 670, 671; 20 R. C. L. 964, 965.

Hamlet continued the use of an automobile truck which had on it the words "Hamlet & Yager." There was no name on the store. At the time of the dissolution the firm had letterheads bearing the firm name at

the top. Hamlet continued to use those letterheads after the dissolution. There is no proof that he ever wrote to McNeil & Higgins Company on those letterheads, nor whether he signed letters written on said stationery "William Hamlet" or "Yager & Hamlet." If McNeil & Higgins Company received letters from him on such letterheads, they should have been introduced in evidence. A traveling salesman for McNeil & Higgins Company visited this store about every 2 weeks. Plaintiff called Hamlet as its witness and he testified in chief that he always paid his bills to McNeil & Higgins Company by checks signed "Yager & Hamlet." On cross-examination counsel for Yager placed in his hands two checks, payable to the order of McNeil & Higgins Company, one dated May 1, 1917, for $400, and one dated June 18, 1917, for $200, each of which was signed "William Hamlet" and not "Hamlet & Yager" or "Yager & Hamlet." Hamlet then receded from his statement that he had paid McNeil & Higgins Company for goods bought after the dissolution by checks signed "Yager & Hamlet" and, so far as now appears, all such payments may have been paid by checks signed by him personally. Hamlet testified that 4 days before the dissolution he told plaintiff's traveling salesman that he was considering taking over the business himself, and that he discussed that matter with the salesman. He was asked by Yager's counsel if he discussed that with said traveling salesman after the dissolution. He gave answers indicating that he did not discuss that immediately, and that he did not recall whether he did or not. Counsel for Yager sought to put leading questions to him on this subject, to which the court sustained objections, and Hamlet was finally induced to say "No" to the question. Two things are obvious. Hamlet was a witness for the plaintiff and Yager's counsel had a right to cross-examine him on that subject and to put leading questions to him when he appeared to hesitate. Moreover, it would be probable that Hamlet would discuss his

having purchased the entire business with the salesman of whom he bought goods and with whom he had already discussed the advisability of that step. We are of the opinion that the examination of Hamlet by Yager's counsel was improperly restricted. Yager sought to show that immediately upon the dissolution he published notice thereof in a newspaper published in North Chicago and the extent of the circulation of said newspaper, but he was not permitted to do so. In *Page v. Brant, supra,* it was held that publication of a notice in a newspaper did not amount in law to notice to prior dealers with the firm, but that it was proper evidence for the consideration of the jury in determining the fact of actual knowledge or notice. We think Yager should have been permitted to show at least what the notice was which he published and the prominence of the paper in which he published it, so that before the court ruled upon the testimony it would know what all the facts pertaining to said publication were. Again, Hamlet having had a conversation with plaintiff's salesman 4 days before the dissolution, in which Hamlet discussed the proposed taking over of the business by himself, and this having been followed by remittances to plaintiff by checks signed by Hamlet individually and not in the firm name, and it appearing by the statement of plaintiff's counsel that these remittances were before the present bill of goods here involved was purchased, and it being a fair inference from the absence of other proof that all Hamlet's checks to plaintiff after the dissolution may have been signed in his own name, we think there was such evidence tending to show notice to plaintiff that Hamlet was doing business in his own name only, that the court was not authorized to direct a verdict for plaintiff.

The court below undertook to enter or the clerk wrote in the record two judgments on the same day in this case, one against Hamlet, which did not describe him as impleaded with Yager, trading as Yager

& Hamlet, and the other against Yager, without describing him as impleaded with Hamlet. The two judgments are not for the same precise amount. They are not in the proper form of judgments at common law, but are rather directions to enter judgments. Plaintiff insists that these two judgments are only one, and are a unit, and are to be treated as a unit. We therefore take plaintiff at its word, and reverse both so-called judgments and remand the cause for another trial.

*Reversed and remanded.*