## Richard Guthmann, Appellee, v. Adco Dry Storage Battery Company, Appellant.

### Gen. No. 28,378.

1. TRUSTS—*suability of "common-law" business trusts.* An action for damages for fraud and deceit practiced by the trustees of a so-called "common-law" or "Massachusetts trust" cannot be maintained against the trust as such in its trade name where the trustees are not made parties defendant.

2. FRAUD AND DECEIT—*sufficiency of evidence of loss by fraud.* A judgment in an action for damages for fraud and deceit is erroneous where the amount thereof includes not only cash obtained from plaintiff by the fraud but also the amount of two notes which he executed and delivered in connection with the transaction where it is not clear from the evidence that the notes were ever transferred to innocent holders and there is no proof whatever that they had been placed in judgment or that plaintiff could be held liable thereon.

Appeal by defendant from the Municipal Court of Chicago; the Hon. GEORGE B. HOLMES, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1923. Reversed and remanded. Opinion filed March 10, 1924.

WILLIAM A. JENNINGS, for appellant.

BRADLEY, WILLIAMS, KEARNS & FARRELL, for appellee; HUGH J. KEARNS, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In this case, "The Adco Dry Storage Battery Co., a common-law trust," defendant in the trial court, appeals from a judgment in the sum of $5,000 entered upon the finding of the court, motions for a new trial and in arrest of judgment having been overruled.

Although the proceeding below was in the municipal court, the suit purported to be brought in assumpsit and after it was begun an attachment in aid was issued and Greenbaum Sons Bank and Trust Company

summoned as garnishee. The *præcipe,* summons and attachment were all directed against the defendant by the designation as above set forth. The return of the sheriff shows service upon the defendant as upon a corporation, but the defendant is nowhere so desig·nated in the pleadings and it is not claimed that it is in fact a corporation.

After the service of summons Fred W. Curtis and E. M. Craighead, describing themselves as "Trustees, Adco Dry Storage Battery Co., a common-law trust," entered a special appearance stated to be for the sole purpose of objecting to the jurisdiction of the court, and for the purpose of showing that the court had no jurisdiction of their personal property because their property could not be attached nor could the jurisdiction of their persons be obtained by an action at law, all of which it was alleged appeared upon the face of the record in the cause. They, therefore, moved to quash the process and dismiss the suit. This motion was denied by the court.

Thereafter, by the same designation, these trustees traversed the allegations of the affidavit for the attachment in aid. The garnishee answered that it had certain money on deposit "to credit of and standing in the name of Adco Dry Storage Battery Co.," but that defendant was indebted to it in a sum exceeding the amount of the deposit. A motion was thereafter made to strike the plaintiff's statement of claim from the files, which motion was overruled by the court.

The statement of claim in substance alleged that about April 1, 1922, defendant, by its officer and agent, Fred W. Curtis, fraudulently deceived the plaintiff, claiming that it possessed a secret formula for making dry-storage batteries and electro-lite, and that said secret formula was known only to Curtis, who was then agent of the defendant and an agent and officer of the company; that relying upon these and other statements which were false and fraudulent, the plaintiff entered into a contract in writing whereby he paid to

defendant $2,000 in checks of $1,500 and $500, respectively, and gave his notes for $3,000.

An affidavit of merits was filed by Curtis in which he alleged that he and E. M. Craighead "as trustees, own and operate the Adco Dry Storage Battery Co., a common-law trust," that they have a good defense upon the merits to the whole of plaintiff's demand, denying any false or fraudulent representations in the transaction set up by plaintiff, and denying that defendant was indebted to the plaintiff.

Upon trial, the plaintiff was permitted to increase his *ad damnum* to $5,000 and, after hearing the evidence, the court found for the plaintiff and entered judgment for that amount.

That the plaintiff was deceived and defrauded is, we think, established by the evidence and indeed the contrary is not here asserted in defendant's behalf. It is, however, strenuously asserted in support of the appeal that the judgment entered by the court is a nullity, because no legal entity was sued. The statement of claim alleges and the evidence introduced on the trial showed that Curtis and Craighead, who appeared in the case for the Adco Company, were the trustees of a supposed business organization now generally designated as a "Massachusetts trust" by reason of the skill and erudition with which the rules applicable to such organizations have been laid down by the courts of that State. A certified copy of the articles of agreement by which this supposed trust was formed appears in evidence and it appears therefrom that all the property of the trust was conveyed to certain persons with their successors designated as trustees; that the interest of the subscribers in the property of the trust estate was to be evidenced by certificates without any stipulated par value; that the trustees were to hold the property acquired with its proceeds, accumulations and profits in trust, that they should manage and dispose of the same for the benefit

of the holders. It was, however, expressly declared that the intention of the parties was to create a real trust, not a partnership; that the trustees under the name "Adco Dry Storage Battery Co." should conduct all business and execute all instruments in writing in the performance of their trust; that the trustees should hold office for life or during the trust or until the election or the qualification of their successors; that these trustees should exercise the exclusive management and control of the trust, assume all obligations and liabilities in connection with or growing out of the property rights, that they should indemnify the subscribers against any expense or liability in connection with any contract or obligation concerning the property; that they might adopt and use a common seal, collect, sue for and receipt for all moneys, and with the consent of their members borrow money for purposes incidental to the proper management and conduct of the trust, and might pledge the property of the trust in such manner as they might deem best, might buy or sell, hold, exchange or mortgage, manufacture, buy, sell or trade generally in goods, wares and merchandise, and in particular might engage in business of the kind concerning which the contract here in question was executed; that the ownership of shares should not entitle the shareholder to any title in or to the trust property, or a right to call for a partition or division of the same or for an accounting or for any voice or control whatsoever of the trust property, or of the management of the trustees.

The agreements specifically provided: "The trustees shall have no power to bind the shareholders personally and the subscribers and their assigns and all persons or corporations extending or contracting with or having any claims against the trustees shall look only to the funds and property of the trust for payment under such contracts or claims or for any debts, damages, judgments or decrees or for any money that

may otherwise become due and payable to them from the trustees so that neither the trustees nor the shareholders present or future shall be personally liable therefor.''

That an organization or association of this kind is not suable in an action at law under the collective name by which it does business in the absence of a statute authorizing such suit has been decided by the courts of this and other States. See opinion in *Sprainis v. Lietuwishika Evangelishka Liuterishka Draugystes* this day filed, *post,* p. 427. The principal authorities to that effect are cited in *Moskal v. New Era Commercial Ass'n,* 228 Ill. App. 278, and the exceptions made in some special cases, where trade unions are involved, are there pointed out and the authorities cited. Under certain circumstances, none of which, however, appear in this case, the members of such associations may be held liable as partners, but in such cases, in the absence of a statute, all the members must be joined. *Pilsen Brewing Co. v. Wallace,* 291 Ill. 62; *People v. Brander,* 244 Ill. 26; *Milliman v. Seed,* 206 Ill. App. 362. The defendant here cites and relies upon the case of *H. Kramer & Co. v. Cummings,* 225 Ill. App. 26, and contends that it is authority for the proposition that a trust such as this one appears to be is not suable in an action at law. That cautious opinion does not sustain or declare any such rule. The facts in that case were that the plaintiff who had sold certain goods to the defendant, which was a trust of the kind here under consideration and which was known as ''Declarations of Trust of Roman Metals Co., Ltd.,'' sued the trustees of that trust individually for the purchase price of the goods. It was unquestioned in the case that the goods had been purchased for and billed to the company and credit given to it, not to the defendants either individually or collectively. It was further undisputed that the plaintiff had entered into the transaction with full knowledge and notice of the character of the concern with which it was dealing,

and the court said: "The suit is manifestly predicated upon the individual and joint liability of defendants, and not as to their liability as trustees to the extent of the assets of the trust, and as they cannot under the terms of the trust, and the contract made specifically with reference thereto, be liable in their individual capacity, severally or jointly—whatever may be their liability to one having no notice of the character of the company—the judgment must be reversed." That case did not go further than to hold that, under the facts as recited, the individuals sued were not personally liable and we think by implication holds (although such a holding was perhaps not necessary to a decision of the case) that such an organization might be liable in a suit at law in case those acting as its trustees were sued as such.

In the present case, however, the trustees were not thus sued and the point made by the defendant here, that neither a natural nor artificial person has been made a party defendant to the suit, seems to be well taken. 30 Cyc., pp. 26-28; *Godair's Estate v. Case,* 220 Ill. App. 348. We are not unmindful of the fact that the gist of the action which we now consider is fraud and deceit, but this fact does not do away with the necessity of bringing suit against some legal entity. We think that trustees intrusted as here with the conduct of a business, who in connection with that business are guilty of fraud and deceit, would not only be liable in an action at law as trustees of the trust, but also, in case they participated in the fraud, would be personally, jointly and severally liable. Although the question has not been discussed in the briefs filed in this case, we think, in fairness, it should be stated that there is doubt in the mind of this court as to whether the socalled "Massachusetts trust" is legal in the State of Illinois.

The judgment in this case must be reversed for the reason above indicated. There is another reason which also requires a reversal. The amount of the

judgment includes not only the cash obtained from the plaintiff by fraud and deceit, but the amount of two notes which he executed and delivered in connection with the same transaction. It is not clear from the evidence that those notes were even transferred to innocent holders and there is absolutely no proof that they had been placed in judgment or that the plaintiff could be held liable thereon. *Smith v. Carlson,* 36 Minn. 220; *Southern Gas & Gasoline Engine Co. v. Peveto* (Tex. Civ. App.), 150 S. W. 280.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

McSURELY and JOHNSTON, JJ., concur.